606 F.2d 1385
 197 U.S.App.D.C. 13
 VIRGINIA APPALACHIAN LUMBER CORPORATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and the United States of
America, Respondents.
VIRGINIA APPALACHIAN LUMBER CORPORATION, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Roy Stone Transfer Corporation, W & L Motor Lines, Inc., and
Wall Trucking Co., Inc., Norton-Ramsey Motor
Lines, Inc., Intervenors.
VIRGINIA APPALACHIAN LUMBER CORPORATION, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Norton Ramsey Motor Lines, Inc., W & L Motor Lines, Inc.,
Blue Ridge Transfer Co., Inc., and Roy Stone
Transfer Corporation, Intervenors.
 Nos. 77-1610, 78-1429 and 78-1670.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 19, 1979.
Decided Sept. 26, 1979.
 
 E. Stephen Heisley, Washington, D. C., with whom Lester R. Gutman, Washington, D. C., was on the brief for petitioner.
 Kenneth P. Kolson, Atty., Interstate Commerce Commission, Washington, D. C., for respondents.
 Mark L. Evans, Gen. Counsel, Frederick W. Read, III, Associate Gen. Counsel, Ellen K. Schall, Atty., Interstate Commerce Commission, John J. Powers, III and Catherine G. O'Sullivan, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents.
 Also Wilmer B. Hill, Washington, D. C., entered an appearance for petitioner.
 
 
 1
 Also Robert S. Burk, Atty., Interstate Commerce Commission, Washington, D. C., entered an appearance for respondent, Interstate Commerce Commission.
 
 
 2
 Also John R. Sims, Jr. and Robert B. Walker, Washington, D. C., entered appearances for intervenors, Roy Stone Transfer Corp. and Blue Ridge Transfer Co., Inc.
 
 
 3
 Also Francis J. Ortman, Washington, D. C., entered an appearance for intervenor, Norton-Ramsey Motor Lines, Inc.
 
 
 4
 Also Theodore Polydoroff, McLean, Va., entered an appearance for intervenor, W & L Motor Lines, Inc.
 
 
 5
 Before WRIGHT, Chief Judge, and ROBINSON and ROBB, Circuit Judges.
 
 
 6
 Opinion for the Court filed by Circuit Judge ROBB.
 
 ROBB, Circuit Judge:
 
 7
 The petitioner, Virginia Appalachian Lumber Corporation, known as VALCO, is an irregular route common carrier engaged in the transportation of new furniture from points in Virginia and North Carolina to points in ten western states. In these consolidated cases VALCO attacks (1) the "Fitness Flagging" Procedures of the Interstate Commerce Commission, and (2) the denial by the Commission of VALCO's application for operating authority, upon the grounds that VALCO is unfit to conduct the proposed operations. A brief review of the history of the "Fitness Flagging" procedures will aid in understanding the issues presented.
 
 
 8
 Before issuing a certificate of convenience and necessity to motor common carriers the Interstate Commerce Commission is required by statute to determine, among other things, that the carrier is "fit, willing, and able properly to perform the service proposed and to conform to the provisions of (the Act) and the requirements, rules, and regulations of the Commission thereunder . . . ." 49 U.S.C. § 307(a) (1976). Over the years the Commission established procedures whereby it held applications for common carrier authority in abeyance whenever the applicant carrier's fitness was under investigation in a prior formal proceeding. These fitness flagging procedures were invalidated by a three-judge district court in North American Van Lines, Inc. v. ICC, 412 F.Supp. 782 (N.D.Ind.1976). The court found that the flagging procedures were in excess of statutory authority and arbitrary, in violation of the Administrative Procedure Act. Responding to this decision the Commission in a rulemaking proceeding promulgated its Fitness Flagging Procedures, 49 C.F.R. § 1067 (1978). These rules require that in any "application proceeding in which fitness flagging is being considered" the Commission's Bureau of Investigations and Enforcement shall "advise applicant, in writing, of the matters of fact and law to be asserted with sufficient particularity to make clear the violations alleged and the nexus alleged to exist between those violations and the application proceeding . . .." The applicant is given "an opportunity to submit within 20 days . . . any verified written representations including facts and arguments tending to show cause why all or any of the applications identified in the order should not be flagged for fitness. . . ." The Bureau of Investigations and Enforcement is given fifteen days to reply. 49 C.F.R. § 1067.7.
 
 
 9
 On November 14, 1978 the Court of Appeals for the Sixth Circuit held that the Fitness Flagging Procedures under the Commission rules violated the Administrative Procedure Act in that they failed to comply with the hearing requirements of 5 U.S.C. §§ 556(d) and 557(c) (1976). Ligon Specialized Hauler, Inc. v. ICC, 587 F.2d 304 (1978). Specifically the court said:
 
 
 10
 It should be obvious that the show-cause procedures fail to give carriers the hearing rights under the Administrative Procedure Act to which they are entitled in fitness flagging procedures. Under the show-cause procedures, the Bureau of Enforcement or Department of Transportation files a statement that contains the allegations against the carrier and the asserted relationship of the allegations and the application proceeding, and all a carrier can do is to submit to the ICC verified written representations to show why flagging should not occur, to which the Bureau of Enforcement or Department of Transportation may respond in rebuttal. Solely on this basis, the ICC may flag and did in this case all applications for certificates of operating authority that a carrier has pending before the ICC. The Bureau of Enforcement or Department of Transportation does not truly bear the burden of proof. All that the Bureau of Enforcement or Department of Transportation submits are allegations as to violations by carriers, not proof, and on the basis of those allegations the ICC may order fitness flagging. Nor does the carrier have the opportunity to submit evidence other than through verified written representations, to conduct cross-examination, to submit rebuttal evidence, or to submit proposed findings and conclusions.
 
 
 11
 Id. at 317.
 
 
 12
 VALCO's petitions for review in this court relate to three interrelated proceedings before the I.C.C. These proceedings are:
 
 
 13
 (1) No. MC-136511 (Sub-No. 3). This was an application for common carrier authority filed May 31, 1973. The application was granted in part June 27, 1975. On February 26, 1976 the order granting authority was vacated and the proceeding was "held open for further consideration of applicant's fitness subsequent to final determination in No. MC136511 (Sub-No. 5)." This order was followed by a show-cause order on January 21, 1977, pursuant to the Commission's flagging rules. Thereafter, having considered submissions by both VALCO and the Bureau of Investigations and Enforcement the Commission concluded that flagging the Sub-No. 3 application was justified because a nexus had been shown between the allegations of unfitness made in Sub-No. 5 and the operations proposed in Sub-No. 3. An order holding the Sub-No. 3 application in abeyance was entered March 31, 1977. In our No. 77-1610 VALCO petitions for review of this order. On May 31, 1978, after the Commission in Sub-No. 5 found VALCO unfit, the Sub-No. 3 application was denied.
 
 
 14
 (2) No. MC-136511 (Sub-No. 5). This was an application for authority filed by VALCO August 12, 1975. The Bureau of Investigations and Enforcement questioned VALCO's fitness, and hearings on this issue were held before an administrative law judge (ALJ) on thirteen days in April, May and July 1976. On December 30, 1976 the ALJ issued his initial decision finding that VALCO had not shown itself fit to conduct the proposed operations. This decision was affirmed and the order finding VALCO unfit became final April 25, 1978. In our No. 78-1429 VALCO petitions for review of this order.
 
 
 15
 (3) No. MC-136511 (Sub-Nos. 7 Et al.). While the fitness proceeding was pending in Sub-No. 5 VALCO submitted ten other applications for authority, designated as Sub-Nos. 7, 10, 12, 17, 18, 19, 20, 21, 22 and 23. Pursuant to the fitness flagging procedures these applications were held in abeyance pending a determination as to VALCO's fitness in the Sub-No. 5 proceeding. By order dated June 30, 1978 all ten applications were denied, upon the basis of the finding of unfitness made in Sub-No. 5. In our No. 78-1670 VALCO petitions for review of this order.
 
 
 16
 We turn first to VALCO's petition to review the order holding the Sub-No. 3 proceeding in abeyance pending a determination of the fitness issue in Sub-No. 5. This petition is our No. 77-1610. On May 19, 1978 the Commission moved the court to dismiss No. 77-1610 for mootness, because Sub-No. 3 was no longer in abeyance but had been decided by the denial of the application. The motion was referred to the merits panel of the court, which granted it on December 27, 1978. VALCO moved for reconsideration. We grant that motion and vacate our December 27, 1978 order dismissing the petition. We conclude that although VALCO's specific complaint in respect of the flagging of Sub-No. 3 is mooted, VALCO's general attack on the flagging procedures survives and presents a continuing legal controversy. The order holding the Sub-No. 3 application in abeyance, in effect for fourteen months March 31, 1977 May 31, 1978 was we think typical of "short term orders, capable of repetition, yet evading review". Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The Commission may not insulate such an order from review by deciding the fitness question on the merits.
 
 
 17
 As we have said, on November 14, 1978 the Court of Appeals for the Sixth Circuit held that the Commission's fitness flagging procedures, as applied to the VALCO applications, were invalid. Ligon Specialized Hauler, Inc. v. ICC, 587 F.2d 304 (1978). The Commission did not petition the Supreme Court for certiorari; on the contrary counsel for the Commission informed us at oral argument that the Commission will revise its fitness flagging procedures to conform to the mandate of the Ligon case. We think this decision by the Commission is sound, for we agree with the opinion of the Sixth Circuit court. Our agreement encompasses not only the result of that decision, but also the court's analysis and reasoning. This being so we think elaboration of our views is unnecessary; it is enough to say that the orders holding in abeyance the applications in Sub-No. 3 and Sub-Nos. 7, Et al., were invalid. We vacate those orders and remand those flagging proceedings to the Commission. In light of the Commission's final decision in Sub-No. 5 finding VALCO unfit, however, a decision we shall uphold, it would be useless to order the Commission to reconsider its original and invalid flaggings of VALCO's applications.
 
 
 18
 In our No. 78-1429 VALCO attacks the Commission's determination in Sub-No. 5 that it was unfit to conduct the proposed operations or to conform to the requirements of the Act and the Commission's rules and regulations. VALCO says the Commission's decision was arbitrary and capricious because the Commission misinterpreted the evidence and because it applied to VALCO a standard harsher than that applied to other similarly situated carriers. VALCO argues further that the Commission abused its discretion by refusing to reopen the record to receive two favorable compliance reports and a verified statement from VALCO's president outlining changes in the company's operations that were thought to make it a fit carrier. We are not persuaded by either argument.
 
 
 19
 In a careful decision the ALJ analyzed the evidence received in thirteen days of hearings before him. He found that as early as 1969 VALCO was notified by a letter from a Commission district supervisor that certain of its operations were unauthorized. VALCO was again notified in March 1972 that it had operated outside the scope of its certificate. An August 1973 compliance survey revealed, among other things, violations of both sections 217(b) and 219 of the Interstate Commerce Act, 49 U.S.C. §§ 317(b), 319 (1976) (failure to observe tariff rules and charging more than specified in the tariff; failure to issue receipts or bills of lading). The evidence also established numerous violations of Commission regulations, especially with respect to leasing and inspection of equipment.
 
 
 20
 In addition, a January 1974 investigation report revealed many violations of section 206(a) of the Act, 49 U.S.C. § 306(a) (1976), with respect to the transportation of new furniture from unauthorized origins. The violations resulted in a $1400 civil forfeiture by VALCO in April 1974. Another compliance survey, made in February 1975, revealed over 100 instances of transporting property between unauthorized points in violation of section 206(a), 25 instances of charging less compensation than specified in its tariff, and a failure to maintain proper detention records. Finally, there were instances when freight bills were issued erroneously reflecting the origin of a particular shipment.
 
 
 21
 After reciting the unlawful operations engaged in by VALCO between 1969 and 1975 the ALJ stated:
 
 
 22
 Furthermore, the evidence in this proceeding overwhelmingly reflects that it was common practice for VALCO's personnel and agents to execute factitious (sic) leases. It was estimated by one of the witnesses, whose testimony was credible, that the Commission's regulations with respect to trip-leasing, observance of gateways and "interchange" points, inspections of vehicles, the maintenance of drivers' logs, etc., were violated by VALCO on more than 200 occasions during a period of approximately two years (see the appendix attached hereto). In addition, the evidence reflects that these violations were known and encouraged by applicant's officials, including Messrs. Bobby D. Smith and Van Sledd, despite any denials to the contrary.
 
 
 23
 (J.A. Nos. 78-1429 & 78-1670 at 106) (hereinafter cited as J.A.)
 
 
 24
 The ALJ also examined the evidence to determine whether VALCO had brought its operations into compliance and could be expected to comport with the requirements of the Act and regulations. He found:
 
 
 25
 The oral hearing herein was an opportunity for VALCO to indicate to the Commission its awareness of past violations, the corrective action taken, and the procedures and programs which applicant has taken to insure future compliance. It is significant that applicant, particularly through its chief executive officer and owner, Mr. Bobby D. Smith, refused specifically to admit to any particularized irregularities or deficiencies at least to the extent of demonstrating his awareness of the Commission's lease and interchange regulations, his desire to comply with those regulations, and his ability and willingness on behalf of the applicant to detail substantive changes to insure future compliance and to demonstrate current compliance. None of this was done on behalf of applicant in this proceeding.
 
 
 26
 (J.A. 107)
 
 
 27
 Based on the evidence and on his findings with respect to the credibility of witnesses the ALJ found:
 
 
 28
 The record is replete with detailed evidence of VALCO's extensive unlawful operations and violations of the Commission's rules and regulations. They are numerous in number and of many variations; and these violations have occurred over the years (from 1969 until the present), despite the actions of the Commission's field personnel in pointing out the violations (or possible violations) to VALCO's officials and their (Commission's field personnel) attempts to obtain compliance or even acknowledgments to their warning letters respecting unauthorized transportation. Taken together, these violations (the number and nature) reflect a pattern of operations, and an intent to operate, that demonstrates a general disregard for the rules and regulations of the Commission. (Footnote omitted).
 
 
 29
 (J.A. 106)
 
 Finally, the ALJ concluded:
 
 30
 (I)t is clear that the nature and extent of applicant's violations are substantial, with no plausible or probative mitigating circumstances shown to exist. It can only be concluded that applicant's conduct represents a flagrant and persistent disregard for the provisions of the Interstate Commerce Act and the Commission's regulations thereunder. Therefore, a statutory finding that applicant has not shown itself fit to receive additional authority is required to be made herein.
 
 
 31
 (J.A. 108)
 
 
 32
 The findings of the ALJ were affirmed by the Commission. In our opinion there is substantial evidence in the record to support those findings and we will not disturb them.
 
 
 33
 The hearing in Sub-No. 5 closed in July 1976. The initial decision was filed December 30, 1976. On March 13, 1978 VALCO filed its motion to reopen the record to receive a March 1977 compliance report, a May 1977 compliance report, and a verified statement from Bobby D. Smith, President of VALCO. The Commission denied the motion to reopen. We think the denial was a reasonable exercise of the Commission's discretion. The Commission was justified in believing that the tendered documents could not have changed the result and that the time had come to bring this long-lived proceeding to an end. Moreover, the Commission stated:
 
 
 34
 In future application proceedings, however, we would welcome the timely submission of evidence which discusses with particularity any corrected action VALCO may have taken since the closing of the record in this proceeding. 49 C.F.R. § 1067.17.
 
 
 35
 (J.A. 150)
 
 
 36
 In our Numbers 77-1610 and 78-1670 we remand the Commission's orders. We affirm the Commission's order challenged in No. 78-1429.
 
 
 37
 So ordered.